UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | DOCKET NO. 2:05 CV 1395 |
| VERSUS | : | JUDGE MINALDI |
| BURLINGTON RESOURCES OIL AND GAS COMPANY L.P., ET AL | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Presently before the court are cross motions for summary judgment. (Doc. 29 & 31). This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(c).

The United States filed this claim under the Oil Pollution Act of 1990, 33 U.S.C. § 2701 et. seq., ("OPA") to recover $1,393.963 in removal costs related to the 2000-2001 clean-up of an oil production pit and the surrounding area. The pit was located in Section 37, Township 12 South, Range 10 West in Cameron Parish, Louisiana. At the time of the clean-up defendants owned an undivided interest in a mineral servitude on the property that included the oil production pit. The cross motions for summary judgment turn on the issue of whether Defendants are the "responsible party" under OPA.

> The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. . . .  As to material facts on which the nonmovant will bear the burden of proof at trial, the nonmovant must come forward with evidence which would be sufficient to enable it to survive a motion for directed verdict at trial.  If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted." (internal quotes and citations omitted)  *Stults v. Conoco, Inc.*, 76 F.3d 651 (5th Cir. 1996).

The parties agree that for Defendants to be liable under OPA they must be a "responsible

party" for a "facility" under the statute. 33 U.S.C. § 2702(a). For the purposes of the motions before the court the parties concede that the oil production pit is the "facility" at issue. A "responsible party" includes "any person owning or operating the facility. . . " 33 U.S.C. § 2701(32)(B).[1] The parties also agree that Defendants were not operators of the facility so in order to be considered "responsible parties" they must be considered the "owner" of the facility, the oil production pit, within the meaning of the statute. Plaintiff bears the burden of proof on this issue. The statute is not particularly enlightening in this regard as it defines "owner or operator"as "any person owning or operating such facility." 33 U.S.C. § 2701(26)(A)(ii). The parties agree that we must look to the law of Louisiana in order to determine whether Defendants were an "owner" of the oil production pit at any pertinent time. *United States of America v. LL&E Co.*, 2006 WL 851183, at \*3 (E.D.La. 2006).

The oil production pit that is the subject of this litigation was created in connection with oil and gas exploration and production in the 1930s. The parties agree that the production pit was last used in 1971 at the latest. In 1986 Union Texas sold its 56.82% undivided interest in the property that included the production pit to William D. Blake ("Blake"). The act of sale also provided: "The vendor reserves unto itself its vendees and assigns, all of the oil, gas and other mineral in, under or that may be produced from said land." (US007751). In 1991, Union Texas sold its undivided 56.82% mineral interest to Defendants' predecessor. By this time an order

---

[1] 33 U.S.C. § 2701(32)(F) provides that in the case of an abandoned facility "responsible party" includes "the persons who would have been responsible parties immediately prior to the abandonment of the vessel or facility. . . " For the purposes of the motions presently before the court the Defendants are not making the argument that if the production pit is an "abandoned facility" the "responsible party" is limited to "the persons who would have been responsible parties immediately prior to the abandonment of the vessel or facility." *See also U.S. v. Bois D'Arc Operating Corp*. 1999 WL 130635 (E.D.La. 1999).

issued by the Louisiana Department of Natural Resources, Office of Conservation prohibited the use of the oil production pit.

One argument made by Plaintiff is that Defendants predecessor acquired ownership of the pit from Union Texas by virtue of the 1991 Asset Purchase Agreement. U.S. Response p. 1. This argument presupposes that Union Texas still owned the pit in 1991. This in turn presupposes that Union Texas did not sell its interest in the pit to Blake in 1986.

Plaintiff argues that in the 1986 sale to Blake Texas Union's reservation of "all of the oil, gas and other mineral in, under or that may be produced from said land" is ambiguous, and that, in fact, this reservation included the oil production pit at issue in this case as well as any other physical assets associated with mineral production.[2] This argument is unconvincing. The transfer of the land included the pit as one of its components. La.C.C. art. 469. The reservation clause in the act of sale to Blake clearly constituted a reservation of a mineral servitude. *Horn v. Skelly Oil Co.*, 224 La. 709, 719, 70 So.2d 657, 660 (1954) (Reservation of all minerals and mineral rights in and under property created a mineral servitude "under our long recognized and established jurisprudence."). "A mineral servitude is the right of enjoyment of land belonging to another for the purpose of exploring for and producing minerals and reducing them to possession and ownership." Art. 21 of the La. Mineral Code. Plaintiff has offered no statute, case law, or evidence of customary usage that would suggest that the mineral reservation clause at issue could reasonably be interpreted as also reserving physical assets associated with mineral production.

Plaintiff relies on the case of *Continental Group, Inc. v. Allison*, 404 So.2d 428, 435 (La.

---

[2] Plaintiff points to the affidavit of Blake as supporting its position that the true intent of the parties was that the pit remained with Union Texas. Plaintiff concedes that absent ambiguity as to the transfer of the pit extrinsic evidence is inadmissible to show intent of the parties.

3

1981) to suggest that the reservation of mineral rights was ambiguous. The ambiguity addressed in that case was whether a reservation of "all mineral rights" was limited to oil and gas or included solid minerals such as coal. On original hearing the court concluded that the reservation was not ambiguous. *Id.* at 431. On rehearing the court concluded that a reservation of "all mineral rights" was ambiguous so that extrinsic evidence was admissible to determine what the parties intended. *Id*. at 435. This case might support an argument that there was an ambiguity in the reservation of mineral rights as to whether the parties intended that Union Texas' reservation apply only to oil and gas. *See Holloway Gravel Co. v. McKowen*, 200 La. 917, 9 So.2d 228 (1942) (Reservation of "mineral, oil and gas rights" did not reserve right to sand and gravel.). However, there is no ambiguity in the act of sale as to whether the parties intended to convey ownership of the pit any more than there is ambiguity as to the parties' intent to transfer any other property not mentioned in the act.

    Furthermore, La.C.C. art. 491 provides, in pertinent part:

> [C]onstructions permanently attached to the ground . . . may belong to a person other than the owner of the ground. Nevertheless, they are presumed to belong to the owner of the ground, unless separate ownership is evidenced by an instrument filed for registry in the conveyance records of the parish in which the immovable is located.

The oil production pit was a "construction permanently attached to the ground." *Bayou Fleet Partnership v. Dravo Basic Materials Company*, 106 F.3d 691, 694 (5th Cir. 1997); *See also Albert Hanson Lumber Co., Board of State Affairs*, 154 La. 988, 98 So. 552 (1923). Unless the act of sale to Blake can be said to evidence separate ownership of the pit there is a conclusive presumption insofar as Defendants and their predecessors are concerned that the pit was owned by the owner of the land, Blake. *Broussard v. Northcott Exploration Co.*, 481 So.2d 125, 128

4

(La. 1986).[3]  There is nothing on the face of the act of sale conveying the property to Blake that would evidence separate ownership of the pit.  Thus, the conclusive presumption of La.C.C. art. 491 applies and Blake is considered the owner of the pit

Plaintiff's second and final argument is that even if the ownership of the production pit was not transferred to Defendants' predecessor that the rights Defendants' acquired are sufficient to allow them to be classified as an "owner" for the purposes of OPA.  These rights or pieces of ownership allegedly include: (1) the right of enjoyment of land belonging to another for the purpose of exploring for and producing minerals and reducing them to possession and ownership; (2) the obligation "to restore the surface to its original condition at the earliest reasonable time;" and (3) obligations assumed by Defendants' predecessor in a 1991 asset purchase agreement.  These rights and obligations, whether considered alone or in combination, in no way amount to the substantial equivalent of ownership of the production pit.

As a mineral servitude owner Defendants had a limited right to use the property.  The right was limited to serving the purpose of exploring for and producing minerals, and it was limited to only so much of the land as was reasonably necessary to serve that purpose.  Arts. 21 & 22 of the La. Mineral Code.  Plaintiff concedes that this does not translate into any actual right to use the production pit at all since it could no longer be used in connection with the exploration and production of minerals.

Plaintiff argues that as a mineral servitude owner Defendants were obligated to "restore

---

[3] *See also* Hargrave, *Presumptions and Burdens of Proof in Louisiana Property Law*, 46 La.L.Rev. 225, 234 (1985) (This article reflects "the substantive rule that, as to third persons, constructions and crops go with the land unless separate ownership is indicated in the public records.")

the surface to its original condition at the earliest reasonable time," and that this obligated them to clean up and restore the pit. This is despite the uncontroverted fact that the pit was never used by Defendants or their predecessors. No authority has been cited in support of this position.

Plaintiff also relies on the 1991 Asset Transfer Agreement between Union Texas and Defendants' predecessor as establishing obligations in connection with the remediation of the pit. This agreement transferred Union Texas' interest in the subject property. That interest was, at the time of the 1991 agreement, limited to a mineral servitude. The agreement also provided for the assumption of certain liabilities by the purchaser <u>related to the assets</u>, in this case the relevant assets being the mineral servitude. It is at least doubtful that this agreement can be fairly read as imposing on Defendants the obligation to clean up and restore the pit.

Even if there were an obligation to clean up and restore the pit it could in no way be considered as the substantial equivalent of ownership of the pit. "Ownership is the right that confers on a person direct, immediate, and exclusive authority over a thing. The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law." La.C.C. art. 477.[4]

Plaintiff has failed to establish a genuine issue exists as to whether Defendants are a

---

[4] Plaintiff has argued for an expansive definition of "ownership" in the context of establishing responsible parties under OPA. However, Plaintiff acknowledges that it is aware of no case decided anywhere, by any court, that has held the substantial equivalent to a Louisiana mineral servitude holder to be an "owner" under either OPA or CERCLA. More importantly, the statute provides no guidance as to the exact meaning of "owner." The parties concede that it is appropriate to turn to state law in order determine if Defendants are "owners." Clearly, under Louisiana law Defendants are not owners of the pit. This is as far as this court can or should go. It is not the function of this court to set policy. If this court would create a definition of "owner" out of thin air, such as suggested by Plaintiff, it would clearly be setting policy, not interpreting the statute.

"responsible party" under OPA. There is no summary judgment evidence that would support a conclusion that Defendants are now or ever were "owners" of the oil production pit. Accordingly, Defendants motion for summary judgment is granted, and Plaintiff's motion for summary judgment is denied.

   THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 9th day of March, 2007.

                _____
                ALONZO P. WILSON
                UNITED STATES MAGISTRATE JUDGE